# No. 24-30229

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States of America,

Plaintiff - Appellee

v.

Sarah Elaine Fogle; Jeremiah Micah Deare,

Defendants - Appellants

**On Appeal from**
United States District Court for the Western District of Louisiana

6:21-CR-212-2

## BRIEF OF APPELLANT JEREMIAH DEARE

SUBMITTED BY:

Andre' Robert Belanger
Manasseh, Gill, Knipe & Belanger, P.L.C.
8075 Jefferson Highway
Baton Rouge, LA 70809

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5ᵗʰ Cɪʀ Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| United States of America | Camille Domingue of U.S. Attorney's Office Lafayette, LA |
| United States of America | Myers Namie of U.S. Attorney's Office Lafayette, LA |

| Appellants: | Counsel for Appellants: |
|---|---|
| Jeremiah Deare | Andre' Belanger of Manasseh, Gill, Knipe & Belanger, P.L.C. Baton Rouge, LA |
| Sarah Fogle | Christopher Aberle Mandeville, LA |

S/Andre' Robert Belanger
Attorney of record for Jeremiah Deare

# STATEMENT REGARDING ORAL ARGUMENT

The Appellant requests Oral Argument. This case concerns the ever-evolving jurisprudence concerning the federal Government's regulation of firearms possession and transfer in light of Bruen and its progeny. It also deals with the scope of agency regulatory authority and the ability of the Government's use of agency interpretation of those regulations to impose criminal liability concerning the purchasing and sale of weapons.

# TABLE OF CONTENTS

Contents                                                                                            Page(s)

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS ................................................................................4

INTRODUCTION ........................................................................................6

JURISDICTIONAL STATEMENT ..................................................................7

STATEMENT OF THE ISSUES......................................................................7

STATEMENT OF THE CASE .........................................................................8

STATEMENT OF FACTS ..............................................................................9

SUMMARY OF THE ARGUMENT 1 ..............................................................10

SUMMARY OF THE ARGUMENT 2 ..............................................................12

SUMMARY OF THE ARGUMENT 3 ..............................................................15

SUMMARY OF THE ARGUMENT 4 ..............................................................18

CERTIFICATE OF SERVICE .........................................................................21

CERTIFICATE OF COMPLIANCE..................................................................22

# TABLE OF AUTHORITIES

## Cases

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................... 10

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ……4, 6, 11, 12

*New York State Rifle & Pistol Association, Inc. v. Bruen*,

   142 S. Ct. 2111 (2022) …………………………………4, 9, 10, 15, 16

*United States v. Clark*, 582 F.3d 607 (5th Cir. 2009) ............................... 11

*United States v. Cooper*, 274 F.3d 230 (5th Cir. 2001) ............................. 13

*United States v. Gonzalez-Longoria*, 831 F.3d 670 (5th Cir. 2016) ........... 12

*United States v. Jeffries*, 587 F.3d 690 (5th Cir. 2009) .............................. 13

*United States v. Jimenez*, 509 F.3d 682 (5th Cir. 2007) ............................... 9

*United States v. Shipley*, 546 F. App'x 450 (5th Cir. 2013) ....................... 11

*United States v. Smith*, 440 F.3d 704 (5th Cir. 2006) ................................. 13

*United States v. Vargas-Ocampo*, 747 F.3d 299 (5th Cir. 2014) …………..18

## Statutes and Rules

18 U.S.C. § 921(a)(22) .................................................................................12

18 U.S.C. § 3553(a) ......................................................................................17

28 U.S.C. § 1291 ............................................................................................5

Sentencing Guidelines

U.S.S.G. § 2K2.1(b)(1) .................................................................................15

U.S.S.G. § 2K2.1(b)(5) .............................................................................15, 16

U.S.S.G. § 2K2.1(b)(6) .............................................................................15, 16

U.S.S.G. § 4C1.1 ......................................................................................... 17

# INTRODUCTION

This case concerns the Government's ability to regulate a law-abiding citizen's ability to buy and sell guns from his private collection whether it be at guns shows, his home or at his store which maintains a Federal Firearms License. The law prohibits people from engaging in the business of firearms sales when profit is the primary motive but does allow for individuals to acquire, dispose and enhance their private collections. There is no statutory numerical or temporal limitations imposed. This naturally creates an ambiguity as to what acquisition and disposition is appropriate. A gun hobbyist will have more firearms and engage in more transactions than most. In this case, guidance on that issue was presented to the jury through ATF interpretations of various firearms regulations- an approach now called into question by *Loper Bright*. But, more fundamentally, is the issue as to whether any of these regulations pass constitutional muster in light of *Bruen* and its progeny which demands the Government provide a historical approval of the regulation in question for any prohibitions against the Second Amendment to be valid.

This case raises six assignments of error that can effectively be grouped within four arguments: first, whether the Second Amendment limits the sales and acquisitions of firearms between private individuals without a license; second, whether the government can rely upon ATF regulatory interpretation of what

constitutes a profit motive or improving a firearm collection when deciding to impose criminal liability upon a person for acquiring, exchanging and disposing of firearms at guns shows; third, assuming a valid conviction, whether Deare's sentence is constitutionally excessive and lastly, whether there was sufficient evidence to convict Mr. Deare.

## JURISDICTIONAL STATEMENT

The United States Court of Appeals for the Fifth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which grants courts of appeals jurisdiction over all final decisions of the district courts of the United States. Further, this Court has jurisdiction to review the sentence imposed pursuant to 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

1. Whether the trial court erred when it denied the defendant's Motion to Dismiss on Second Amendment Grounds.

2. Whether the trial court erred when it denied the defendant's Motion to Dismiss for Vagueness.

3. Whether there was sufficient evidence to convict the defendant.

4. Whether the Government's theory of the case relying upon Agency interpretation of gun regulations interpreting statutes runs afoul of the *Loper Bright* decision.

5. Whether the trial court erred in denying the defendant's objections concerning various firearms enhancements.

6. Whether the defendant's sentence was excessive.

## STATEMENT OF THE CASE

Jeremiah Deare, his wife Sarah Fogle and his business, Dave's Gun Shop, LLC., were indicted on August 18, 2021, for seven counts of various federal offenses collectively (ROA 26-79). Counts 1-3 pertain to Jeremiah Deare and they concern a conspiracy to engage in the business of selling firearms without a license; selling firearms without properly recording the entry within Dave's Gun Shop's logbook; and recording a false entry into Dave's Gun Shop's logbook. Prior to trial, the Government would dismiss the four counts pertaining to the business.

Jeremiah Deare moved to Dismiss the Indictment with two separate pleadings: one based on the Second Amendment (ROA. 147-154) and one based upon Vagueness (ROA. 155-161). The matters were submitted on briefs, and both were denied by the court (ROA. 314-319 and ROA. 326-332).

Jeremiah Deare and his wife proceeded to trial on November 27, 2023, through November 30, 2023. Both were convicted. Ultimately, Deare was sentenced to 45 months on Count I, 45 months on Count II and 7 months on Count

III.  These sentences were ordered to run consecutively to each other for a total term of imprisonment of 97 months (ROA. 199).  This appeal now follows.

## STATEMENT OF FACTS

A majority of underlying facts are not disputed.  Jeremiah Deare served this country honorably as a combat ordinance engineer at war in the Middle East.  His service was, in part, related to his passion for firearms and weapons. He is a gun enthusiast.  Jeremiah Deare was the owner and responsible party for Dave's Gun Shop, a licensed firearms dealer (ROA. 37).  Mr. Deare does not hold a Federal Firearm's License in his individual capacity (ROA. 26). In fact, no individual can.

Jeremiah Deare attended Gun Shows throughout Louisiana and at those shows he sold bullets acquired, exchanged and sold guns. The crux of the factual dispute is whether these firearms transactions were a means to enhance and modify Deare's personal collection which does not constitute a crime or, as alleged by the Government, whether the principal objective of these transactions were the earning of a livelihood and profit (ROA. 29).  Deare testified attended these shows in his personal capacity. As such, he was unable to run NCIC background checks on any gun sales or exchanges resulting in the sale to people whom, at the time would be considered prohibited persons though, based upon the ever-evolving nature of federal firearms jurisprudence, this may not necessarily be the case today.

# SUMMARY OF THE ARGUMENT 1

Historically, the Second Amendment does not limit the number of firearms a person can buy or sell. Requiring an individual to possess a federal firearms license to do so is a foreign concept not rooted in historical precedence and a prohibition for doing so which requires an analysis of concepts of whether the "principal objective" is a profit motive or whether the individual is "improving or liquidating" a personal collection makes it impossible to determine when a gun enthusiast runs afoul of the law making it constitutionally vague.

# ARGUMENT 1

## A. Standard of Review

A district court's denial of a motion to dismiss on constitutional grounds is reviewed *de novo*. The Fifth Circuit examines whether the legal standard or constitutional right was applied correctly, without deferring to the lower court's conclusions of law. *United States v. Jimenez*, 509 F.3d 682, 691 (5th Cir. 2007).

## B. The Court Erred in Finding that Licensure and Recordkeeping Requirements Do Not Implicate the Second Amendment

Under *Bruen*, any regulation that affects the right to "keep and bear arms" falls within the purview of the Second Amendment. *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S.Ct. 211 (2022). The district court reasoned that licensure and recordkeeping requirements only impact the sale of firearms and therefore do not

implicate the right to bear arms (ROA. 318). However, *Bruen* makes clear that the Second Amendment protects ancillary conduct necessary to exercise the core right. This includes the commercial sale of firearms, as access to arms is fundamental to the exercise of the right to keep and bear arms. By dismissing this conduct as unrelated to the Second Amendment, the district court ignored the principle that access to lawful arms is integral to the right itself.

Under *Bruen*, if the plain text of the Second Amendment covers the regulated conduct, the burden shifts to the government to demonstrate that the regulation aligns with historical tradition. Here, the Government failed to provide adequate historical analogues to support federal licensure and recordkeeping mandates. The district court cited early American regulations on firearm sales, such as prohibitions on sales to Native Americans, but these are not sufficiently analogous to justify modern restrictions like recordkeeping for lawful firearm transactions among citizens. Furthermore, *Bruen* emphasizes that the existence of a few disparate, outdated laws does not suffice to demonstrate a broad historical tradition.

The district court's reliance on language in *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008), stating that "conditions and qualifications on the commercial sale of arms" may be permissible, does not obviate the requirement under *Bruen* for a historical analogue. *Heller*'s dictum does not provide a categorical exception from

Second Amendment scrutiny for all commercial sale regulations; rather, *Bruen* clarified that even longstanding presumptions are subject to historical examination. As such, "conditions and qualifications" on firearm sales must still satisfy *Bruen*'s historical tradition analysis, which the government failed to meet.

Modern policy interests cannot justify deviations from the historical scope of the Second Amendment. The district court upheld licensure and recordkeeping requirements by describing them as modest regulations that support public safety and facilitate law enforcement. The district court's reliance on policy objectives is inconsistent with *Bruen* and introduces considerations explicitly barred from analysis. Licensing and recordkeeping may serve governmental interests, but these interests cannot override the historical limitations established by the Second Amendment.

## SUMMARY OF THE ARGUMENT 2

The Government's proof relied upon the ATF's agency interpretation in determining whether someone was in the business of selling firearms without a license or whether they were improving or liquidating a private collection. This reliance is called into question in light of *Loper Bright's* prohibition concerning agency deference and mandates a new trial.

# ARGUMENT 2

## A. Standard of Review

The denial of a motion to dismiss an indictment on grounds of unconstitutional vagueness is reviewed de novo. *United States v. Gonzalez-Longoria*, 831 F.3d 670, 675 (5th Cir. 2016).

## B. The Statutory Terms used to convict Deare on Count I are unconstitutionally vague, Failing to Provide Fair Notice and Encouraging Arbitrary Enforcement, Especially Under *Loper Bright's* Rejection of Agency Deference.

In a vagueness challenge, a statute must be sufficiently clear to provide fair notice of what is prohibited. Under Fifth Circuit precedent, a criminal statute is void for vagueness if it fails to provide "a person of ordinary intelligence fair notice of what is prohibited" *United States v. Clark*, 582 F.3d 607, 614 (5th Cir. 2009). However, the terms in question—"dealer" and "engaged in the business"—are ambiguous and allow for arbitrary enforcement. Although § 921(a)(22) attempts to distinguish between a "hobbyist" and an individual "engaged in the business" for "pecuniary gain," the statute's language remains indeterminate, lacking criteria that sufficiently guide enforcement.

The district court relied on cases like *United States v. Shipley*, 546 F. App'x 450 (5th Cir. 2013), to argue that terms such as "dealer" and "engaged in the business" are not unconstitutionally vague. However, *Loper Bright* has now clarified that

courts must apply precise statutory definitions independently without relying on broad terms or agency interpretations. *Loper Bright Enters. v. Raimondo*, 144 S.Ct. 2244 (2024). Here, vague statutory language cannot be upheld solely based on previous interpretations that assumed agency deference, especially when such language leads to potential criminal liability.

Moreover, *Loper Bright* underscores that Congress, not the judiciary, must explicitly define statutory terms that impose criminal penalties. The statute's ambiguous language regarding "dealer" and "engaged in the business" and its "hobbyist" exception risks arbitrary enforcement, as the Government's interpretation could extend liability to individuals who lack fair notice of criminalized conduct.

Without Chevron deference, any ambiguity in the statutes cannot be resolved by deferring to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) or any other agency's interpretation. The courts must interpret the statutes based solely on their text and traditional tools of statutory construction. The vague statutory language allows for selective and arbitrary enforcement. Prosecutors and regulators can decide after the fact whether a person's hobby acquisition and disposition practices meet unspecified standards, leading to unpredictable and inconsistent application of the law.

# SUMMARY OF THE ARGUMENT 3

Jeremiah Deare is a decorated military veteran and first felony offender service 97 months for a victimless white-collar crime involving his Second Amendment right to possess firearms called into question by a federal agency's concerns on how he manages his personal collection of weapons.

# ARGUMENT 3

## A. **Standard of Review**

The appellate court reviews the district court's application of the Sentencing Guidelines under a mixed standard. Legal questions, such as the interpretation of the Guidelines, are reviewed de novo. *United States v. Jeffries*, 587 F.3d 690, 692 (5th Cir. 2009). In contrast, factual findings underlying the guideline calculation are reviewed for clear error. *United States v. Cooper*, 274 F.3d 230, 238 (5th Cir. 2001). The district court's decision to deny a downward variance is reviewed for abuse of discretion. *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006).

## B. **Sentencing a first felony offender to 97 months for a non-violent victimless crime is constitutionally excessive.**

The district court's imposition of a 97-month sentence is excessive when applied to a first felony offender with a track record of stable employment, honorable military service and significant community ties. The sentencing guidelines were

driven in large measure on firearm-related factors that lack historical support under the Second Amendment, as clarified in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

The application of *Bruen* invalidates the PSR's firearm related enhancements. Under *Bruen*, the Supreme Court mandates that courts apply a historical-tradition-only test to any regulations or legal measures impacting the Second Amendment. Enhancements under §§2K2.1(b)(1), (b)(5), and (b)(6), which respectively increased Mr. Deare's offense level for the number of firearms, transfers without record checks, and alleged knowledge of sale to prohibited persons, should be subject to strict scrutiny of historical tradition, as these provisions directly burden the exercise of Second Amendment rights.

- o §2K2.1(b)(1) Enhancement for Number of Firearms: This enhancement adds significant offense levels based solely on the volume of firearms involved, irrespective of any demonstrable harm or intent to engage in dangerous conduct. Under *Bruen*, there is no historical precedent to justify treating mere quantity of firearms as aggravating conduct; rather, firearm ownership is traditionally viewed as protected by the Second Amendment, not inherently criminal. Applying punitive enhancement based on quantity improperly penalizes a lawful aspect of Second Amendment exercise.

- o §2K2.1(b)(5) Enhancement for Firearm Transfer: Similarly, the enhancement under §2K2.1(b)(5) penalizes Mr. Deare for alleged transfers without background checks or records—conduct that lacks historical precedent for government intervention at the time of the Second Amendment's ratification. The enhancement fails *Bruen's* directive to show a clear historical analogue for penalizing private firearm transactions.

- o §2K2.1(b)(6) Enhancement for Knowledge of Prohibited Recipients: The district court's application of this enhancement is likewise inconsistent with *Bruen*. The enhancement penalizes Mr. Deare for alleged transfers to individuals who may have been prohibited from purchasing firearms, without sufficient historical evidence that such conduct would traditionally justify heightened penalties under the Second Amendment. No historical tradition exists that would support an enhancement based on the alleged status of transferees in the manner applied here.

Additionally, the district court's sentence ignored the PSR's own indication of Mr. Deare's minimal criminal history and positive offender characteristics that strongly favor a downward variance.

The PSR itself presents compelling grounds for a downward variance based on Mr. Deare's lack of criminal history, stable family and community ties, and positive personal characteristics. These factors strongly indicate low recidivism risk and align with § 3553(a)'s goal of imposing a sentence that is "sufficient, but not greater than necessary" to achieve sentencing purposes. Key considerations include:

- o Minimal Criminal History: Mr. Deare has no prior convictions, and this is his first offense. His lack of any prior criminal conduct strongly supports leniency under § 3553(a)(1) and aligns with the newly enacted §4C1.1, which allows a two-level reduction for zero-point offenders who meet specific criteria. USSG 4C1.1.

The court's disregard for these factors in favor of strict guideline adherence resulted in an excessive sentence that fails to account for Mr. Deare's unique profile as a low-risk, first-time offender for a non-violent and victimless crime.

## SUMMARY OF THE ARGUMENT 4

There was insufficient evidence to convict Jeremiah Deare.

## ARGUMENT 4

### A. Standard of Review

The standard of review for a sufficiency of the evidence claim is *de novo*. The appellate court views the evidence in the light most favorable to the verdict,

determining whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. This highly deferential standard requires the court to accept all reasonable inferences and credibility determinations made in support of the verdict United *States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014).

## B. There was insufficient evidence to convict Mr. Deare

The sufficiency of evidence argument raised above is predicated upon the court's ruling concerning the Second Amendment and Chevron based testimony elicited at trial to convict Mr. Deare. In the event of a favorable ruling in whole or part for either of these then the rest of the record must be reviewed to see if the remaining admissible evidence is sufficient for a rational trier of fact to have convicted Mr. Deare. This section is added to appeal to preserve the issue.

## CONCLUSION

This case ultimately implicates two trends in federal jurisprudence. One concerns the regulation of firearms by law abiding citizens and the other concerns whether the agency interpretation of statutes constitutes admissible evidence at a criminal trial. In this case, Jeremiah Deare is convicted for a variety of crimes resulting in licensing, paperwork and regulations for the acquisition and disposition of firearms. He is a gun enthusiast and military veteran with a significant gun collection. He

stands convicted because the Government believes how it maintained his collection was abnormal and constituted a business. But, he had a business. The law does not limit the number of weapons you can possess, sell or the size of your personal collection. But the ATF does. This is impermissible.

**SUBMITTED BY:**

S/Andre' Robert Belanger
Manasseh, Gill, Knipe & Belanger, P.L.C.
8075 Jefferson Highway
Baton Rouge, LA 70809

# CERTIFICATE OF SERVICE

I certify that on November 6, 2024, the foregoing document was submitted via Electronic filing with a courtesy copy emailed to counsel for the Government.  Once the Clerk's office approves the electronic submission, paper copies will be forwarded via U.S. Mail to the following parties/counsel:

Camille Domingue

United States Attorney's Office

Western District of Louisiana

800 Lafayette Street

Lafayette, Louisiana 70501

<u>S/Andre' Robert Belanger</u>

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 3541 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman 14 Point Font.

S/Andre' Robert Belanger