---

# No. 24-30229

---

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### UNITED STATES OF AMERICA
*Plaintiff-Appellee*

v.

### SARAH ELAINE FOGLE; JEREMIAH MICAH DEARE
*Defendants-Appellants*

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF LOUISIANA

---

## BRIEF OF APPELLANT SARAH ELAINE FOGLE

---

**Christopher A. Aberle**
**Attorney at Law**
**P.O. Box 8583**
**Mandeville, LA  70470-8583**
**(985) 871-4084**
**caaberle@gmail.com**

***Attorney for Appellant** Sarah Elaine Fogle*

# Certificate of Interested Persons

*U.S.A. v. Fogle* – No. 24-30229

The undersigned counsel of record, appointed under the CJA, certifies that as this is a direct criminal appeal by a noncorporate defendant, there are no persons with a financial interest in the outcome of this case.  The Appellant's name and the names of counsel involved in this case are listed below.  This information is provided so that the Judges of this Court may evaluate possible recusal or disqualification:

(1)  Sarah Elaine Fogle, Appellant

(2)  Christopher Albert Aberle, Appellate Attorney for Appellant

(3)  Aaron Albert Adams, Attorney for Appellant (trial)

(4)  Dustin Charles Talbot, Attorney for Appellant (trial)

(5)  Myers P. Namie, Assistant U.S. Attorney (trial)

(6)  Lauren Ledet Gardner, Assistant U.S. Attorney (trial)

(7)  Camille Ann Domingue, Assistant U.S. Attorney (appeal)

*s/Christopher A. Aberle*
Christopher A. Aberle
*Attorney for Appellant*

## Oral Argument Statement

Fogle requests oral argument.  Given the factual intricacy of the issues presented, oral argument would significantly aid the decisional process.  FED. R. APP. P. 34(a)(2)(C); 5TH CIR. R. 34.2.

# Table of Contents

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Oral Argument Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of the Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Arguments

      1.     The Government failed to present constitutionally sufficient evidence showing that Fogle knew that her conduct violated federal gun laws such that she acted willfully. . . . . . . . . . . . . . . . . 12

      2.     The Government committed plain error during closing argument by misrepresenting the evidence it had presented regarding the information discussed in Fogle's presence during the warning conference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# Table of Authorities

## *Cases*

*Bryan v. United States*, 524 U.S. 184 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*Ratzlaf v. United States*, 510 U.S. 135 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Aguilar*, 645 F.3d 319 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Brooks*, 681 F.3d 678 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Garza*, 608 F.2d 659 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Lara*, 23 F.34th 459 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Marchetti*, 96 F.4th 818 (5th Cir. 2024) . . . . . . . . . . . . . . . . . . . 16

*United States v. Murrah*, 888 F.2d 24 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Nora*, 988 F.3d 823 (5th Cir. 2021) . . . . . . . . . . . . . . . . . 12, 14, 16

*United States v. Shah*, 95 F.4th 328 (5th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . 17

## *Statutes, Codes & Rules*

18 U.S.C. § 922(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FED. R. APP. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# Statement of Jurisdiction

*U.S.A. v. Fogle* – No. 24-30229

As this case arose from the prosecution of an alleged offense against the laws of the United States, the district court had subject-matter jurisdiction under 18 U.S.C. § 3231. The district court entered judgment on April 3, 2024, and on April 5, 2024, Fogle filed a notice of appeal.[1] Accordingly, this Court has jurisdiction over this appeal under 28 U.S.C. § 1291, and the appeal is timely under FED. R. APP. P. 4(b)(1)(A).

---

[1] ROA.30.

# Statement of the Issues

1.     A conviction for conspiracy to engage in the business of dealing firearms without a license requires proof that the defendant acted willfully—that she knew her conduct was unlawful.  Unlike her husband, whom she had just married, Fogle had no training in firearms regulations, and no evidence was presented that she was apprised that her husband's gun-show transactions were illegal.  Does the evidence support a finding of willfulness?


2.     A prosecutor may not refer to or allude to evidence that was not adduced at trial.  The prosecutor argued that Fogle was present when ATF agents advised her husband regarding the law of what it means to be engaged in the business of dealing in firearms, but no such evidence was presented.  As the prosecutor substantially relied on that argument to convince the jury that Fogle acted willfully, did the error affect Fogle's substantial rights?

## Statement of the Case

Sarah Fogle was charged with conspiring with her husband Jeremiah Deare to engage in the business of dealing firearms without a federal firearms license (FFL).[2] A person is "engaged in the business" of dealing firearms if that person:

> devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.[3]

Deare was licensed to deal in firearms through the FFL issued to Dave's Gun Shop, of which he had been sole owner since 2015.  But during the period of the alleged conspiracy (August 2019 to February 2021), Deare, with Fogle's assistance, routinely sold firearms at weekend gun shows, not as representatives of Dave's Gun Shop, but as private unlicensed sellers purporting to sell off their personal collections of firearms.  Deare obtained the firearms from various sources including Dave's Gun Shop, auctions, and estate sales, often putting Fogle's name as the purchaser on the receipts.[4]

---

[2] ROA.26-37.  *See* 18 U.S.C. § 922(a)(1)(A).

[3] 18 U.S.C. § 922(a)(21)(C).

[4] ROA.4065, 4131, 4178-83, 4218-20, 4223-26, 4251-56, 4355-56, 4388, 4579, 4607.

The Government alleges that the foregoing conduct constitutes dealing in firearms without a license because although Deare could have legally sold those firearms on behalf of Dave's Gun Shop, Deare did not possess an additional FFL for use in his capacity as a private individual, and despite Deare's claim that he was merely selling his and his wife's personal collections, their activity fell within the definition of engaging in the business of dealing firearms as their activity was monetarily motivated.[5]  In fact, when the ATF executed a search warrant at their home, where over 200 guns were located along with numerous gun sales receipts, Fogle and Deare freely admitted that they were buying and selling guns, in part, for the purpose of making money to keep Dave's Gun Shop afloat, as sales at the store were suffering due to COVID.[6]

The Government theorized that Deare dealt outside of Dave's Gun Shop in order to avoid the terms of a judgment the previous owner had obtained against Deare for failing to pay on the promissory note executed in 2015 in connection with the sale of the shop to Deare.[7]  The Government further suggested that Deare was taking advantage of the additional money that could be made selling as a private individual

---

[5] *See* ROA.3998-4000.

[6] ROA.4191,4230, 4261, 4297, 4353, 4368-72, 4393-95, 4583, 4601. *See* ROA.3842-43.

[7] ROA.4004, 4048-50, 4394-95, 4684.

due to the "gun show loophole," whereby private sellers, unlike FFL holders, are not required to conduct background checks for firearms transactions, thus making the sales more attractive to buyers.[8]

In addition to showing that Fogle engaged in conduct that would otherwise constitute dealing in firearms without a license, the jury was required to find that she did so willfully, that is, "with knowledge that [her] conduct was unlawful."[9] To prove willfulness, the Government dedicated much of its case to evidence discussed below of conduct that occurred prior to the conspiracy period.

Fogle first met Deare when she entered Dave's Gun Shop to purchase a handgun and a 20-gauge shotgun. Fogle had hunted with her father and was interested in a firearm for her own protection, though she could not be rightly be considered a gun enthusiast or a collector of firearms.[10] As Deare explained: "She's not a gun person."[11]

Deare, on the other hand, began his love for firearms as a child, purchasing his first of hundreds of firearms at age 13.[12] After serving in the army, he joined the

---

[8] ROA.4379-81.

[9] *Bryan v. United States*, 524 U.S. 184, 188-89, 196 (1998). *See* ROA.4700.

[10] ROA.4371, 4628.

[11] ROA.4631.

[12] ROA.4577-78.

National Guard where he worked as an armorer among other things.[13]  Deare began

working at Dave's Gun Shop in 2006.  At the time, the store was a sole proprietorship

owned by David Richard.[14]  By 2015, Deare purchased Dave's Gun Shop from

Richard, and Deare ran the store as an LLC, with Deare as the sole responsible party

to the FFL issued to the gun shop.[15]

Fogle and Deare cemented their relationship in 2018 and ultimately set a

wedding date of September 18, 2019.[16]  While Deare made his living as owner of the

gun shop, Fogle made her living freelance writing articles on the internet as, among

other things, a "search-engine, optimization, content writer."[17]  Although Fogle was

not employed by and did not work at Dave's Gun Shop, she would, however, assist

Deare with weekend gun shows and accompany him on gun acquisition ventures.[18]

Additionally, while Fogle had purportedly written "thousands" of articles about such

topics as plumbing and HVAC, and although she was neither a gun enthusiast nor

collector like her fiancé, she did publish a single online article, just days before her

---

[13] ROA.4575-76.

[14] ROA.4052-53, 4575

[15] ROA.4054

[16] ROA.4574.  *See* ROA.855, 3745, 4636, 4647.

[17] ROA.4600, 4629.  *See* ROA.3748

[18] ROA.4028, 4168, 4208, 4459-60, 4446, 4631.

wedding, that involved the topic of firearms.[19]  The short article, which cursorily defended the reputation of the AR-15, was little more than a superficial defense of the notion that "guns don't kill people, people kill people."  Fogle points out in the article that persons purchasing guns from licensed dealers must pass background checks.  The article also opined, without discussion, that the "gun show or individual sale 'loopholes' are an area that the government can improve upon."[20]  Whether Deare had any hand in the article's creation was not examined at trial because the Government introduced the article to the jury, in the first instance, in its rebuttal case.[21]

Meanwhile, on July 15, 2019, which was two months before Fogle married Deare, the ATF showed up at Dave's Gun Shop for a three-day compliance inspection.  According to ATF Agent Donna Hurstell, the inspection resulted in a finding of numerous violations related to the failure to properly execute paperwork related to firearms transactions and background checks.[22]  Fogle was not present during the inspection.[23]

---

[19] ROA.4647-48, 4652-53.

[20] ROA.3152-55.

[21] *See* ROA.4652.

[22] ROA.4063-64, 4067-69.  *See* ROA.839-57 (Gov. Exh. 19).

[23] ROA.4082.

One month after the inspection, on August 13, 2019, ATF agents conducted a closing conference during which all of the noted gun-shop violations were discussed with Deare.[24]  As standard practice, the agent also provided Deare with numerous brochures or pamphlets, covering all of the rules and regulations regarding gun sales, including the limitations imposed on nonlicensed sellers of firearms, and what it means to engage in the business of dealing firearms.  The agent also discussed those regulations with Deare, though none of the cited violations related to his engaging in the unlicensed business of selling firearms outside of his capacity as the responsible party to the FFL issued to Dave's Gun Shop.[25]  Deare also signed a form on that day acknowledging that those regulations were all discussed with him.[26]  Fogle was not present during the closing conference.[27]

The consequence for the violations found at Dave's Gun Shop was the requirement that Deare attend a warning conference, which occurred on the morning of September 19, 2019.[28]  In accordance with the purpose of the warning conference, the agent discussed the cited violations with Deare—why they happened and how to

---

[24] ROA.4064-65, 4070.

[25] ROA.4070-72.

[26] ROA.4074-75.  *See* ROA.832-35 (Gov. Exh. 7).

[27] ROA.4084.

[28] ROA.4647.  *See* ROA.855 (Gov. Exh 19).

prevent them from recurring.[29]  Fogle, who had married Deare the previous evening, was present during this conference.[30]

Following a four-day trial, the jury found Fogle guilty of conspiring with Deare to engage in the business of dealing firearms without a federal firearms license.[31]  The district court thereafter imposed the statutory maximum prison sentence of five years.[32]

---

[29] ROA.4073-74.

[30] ROA.4083-84, 4636.

[31] ROA.665, 4710-11.

[32] ROA.4801.

## Summary of the Arguments

**1.    The Government failed to present constitutionally sufficient evidence showing that Fogle knew that her conduct violated federal gun laws such that she acted willfully.**

To prove that Fogle acted willfully, the Government relies on the fact that she wrote a single online post about firearms and because she was present as a bystander at a meeting in which the ATF discussed with her husband the regulations that she was accused of later violating.  The article, however, had nothing to do with the regulations concerning the charged offense, nor were those regulations discussed at the meeting.

Unlike her husband, whom she had married at the beginning of the alleged conspiracy period, Fogle was neither a gun dealer nor a gun enthusiast, and no evidence was presented to show that she had been made aware of the law regarding firearms dealing by anyone other than her husband.  Likewise, the Government presented no evidence that he told her that what they were doing might be illegal.

Accordingly, the conviction must be reversed on the ground that the Government failed to present evidence establishing that Fogle acted willfully when she assisted her husband in the acquisition and sales of firearms at weekend gun shows.

**Summary of the Arguments (cont.)**

**2.     The Government committed plain error during closing argument by misrepresenting the evidence it had presented regarding the information discussed in Fogle's presence during the warning conference.**

As evidence of willfulness, the Government repeatedly relied during closing argument principally on a misrepresentation of the evidence, to wit, that during the warning conference at which Fogle was present, the ATF discussed with her husband the rules, regulations, and related definitions regarding what it means to engage illegally in the business of dealing firearms as opposed to the permissible acquisition and disposition of personal firearms collections. No such discussion, however, ever occurred in Fogle's presence.

Given the confusing nature of the evidence regarding the various conferences, the manner in which the Government presented the evidence to the jury, and the passage of several days between its presentation and the giving of closing arguments, even the judge and defense counsel accepted the Government's false version of its own evidence. Thus, the jury was surely fooled as well when it heard the Government's assessment of the evidence in closing, unchallenged by the defense.

Under a correct assessment of the evidence, there is little or no evidence from which a jury could find that Fogle acted willfully. Thus the error affected her substantial rights, and her conviction should therefore be vacated.

# Arguments

## 1.  The Government failed to present constitutionally sufficient evidence showing that Fogle knew that her conduct violated federal gun laws such that she acted willfully.

### *Standard of Review*

Fogle moved for judgment of acquittal at the close of the Government's case and then again at the close of all of the evidence.[33]  Accordingly, review of the sufficiency of the evidence is de novo.[34]  Under that review, this Court, assessing the evidence in the light most favorable to the prosecution, must determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[35]

### *Analysis*

To prove that Fogle conspired to engage in the business of dealing firearms without a license, the Government was required to prove that Fogle acted willfully.[36] "As a general matter, when used in the criminal context, a 'willful' act is one

---

[33] ROA.4563-71, 4656.

[34] *United States v. Nora*, 988 F.3d 823, 829 (5th Cir. 2021).

[35] *Id*.

[36] *Bryan*, 524 U.S. at 190.  *See Nora*, 988 F.3d at 830 ("Conspiracy has two intent elements—intent to further the unlawful purpose and the level of intent required for proving the underlying substantive offense.'") (quoting *United States v. Brooks*, 681 F.3d 678, 699 (5th Cir. 2012)).

undertaken with a 'bad purpose.'"[37]  "In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'"[38]

To prove that Fogle acted willfully, the Government relies principally on two evidentiary matters that purport to show that, although Fogle was not a "gun person" as was her newlywed husband, she was nonetheless aware that her conduct was unlawful.  The Government points first to the fact that Fogle was present during the warning conference of September 19, 2019, and, second, to her online post regarding the AR-15 rifle.  Neither, however, constitutes sufficient evidence of willfulness.

As for the online article, nothing in its contents indicated Fogle had any knowledge whatsoever regarding the rules about the selling of firearms by unlicensed persons, much less the arguably vague distinction between the illegal engaging in the business of selling firearms versus the legitimate selling of one's personal firearm collection.[39]  This Court has rejected similar efforts by the Government to prove willfulness inferentially with evidence that the defendant had knowledge of the

---

[37] *Bryan*, 524 U.S. at 191 (citations omitted).

[38] *Id*. at 191-92 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)).

[39] *See* ROA.155-59 (Deare's Motion to Dismiss Count for Vagueness).

general subject area but without showing that the defendant knew of the specific regulation alleged to have been violated.[40]

Regarding the warning conference, the Government told the jury during its initial closing argument that one month after Agent Hurstell explained to Deare the definition of "engaged in the business" of selling firearms, the ATF conducted a warning conference at which: "These same regulations are told over again in the room with Jeremiah Deare. Sarah Fogle was present. She sat in that room. She heard those regulations. She's a smart woman. You heard her husband say that."[41] In its rebuttal closing, the Government likewise argued: "And Mr. Adams [defense counsel] is right, Sarah Fogle was not required to be at the warning conference; but she was there. She was there. She heard the laws. She's a smart woman.[42]

In so arguing, the Government purported to have carried through on the promise it made to the jury during its opening statement three days earlier:

> You're going to hear testimony that as a result of that 2019 compliance inspection, a warning conference was held for Dave's Gun

---

[40] *See Nora*, 988 F.3d at 831 (reversing conviction for conspiracy to commit health-care fraud for insufficient evidence of willfulness, where the government sought to prove office manager's knowledge of the specific regulations being violated by his company through the introduction of documents showing only that the defendant had been trained in unspecified home health care matters).

[41] ROA.4665-66.

[42] ROA.4686.

-14-

Shop in September of 2019.  At this warning conference ATF inspectors again went over the firearms regulations with Jeremiah Deare including again what an FFL can and cannot do at gun shows and again what it means to be engaged in the business.  Sarah Fogle was present in the room for that warning conference.  She sat in the room with Jeremiah Deare and the ATF investigators.  Just like him, she knew the laws and she knew what they were doing was unlawful.[43]

In fact, the Government presented the jury with no evidence that anything other than the gun-shop violations were discussed at the warning conference.  Although Agent Hurstell testified that the regulations and definitions regarding engaging in the business of dealing firearms were discussed and reviewed with Deare at the *closing conference* in August 2019, Fogle, then Deare's fiancée, was not present at that conference.  But neither Agent Hurstell nor anyone else ever testified that those regulations were again discussed a month later at the *warning conference*, which Fogle, married only hours earlier, did attend.

As Agent Hurstell explained at trial:

A warning conference allows the licensees to come in, speak to the supervisor of that area who oversees that area that they're licensed in, and it allows the licensees to provide information to the supervisors to -- you know, explanation as to why the violations happened and what they have put into place to prevent these violations from happening in the future.[44]

---

[43] ROA.4002-03.

[44] ROA.4073.

Consistent with that purpose and with the Government's allegations contained in the indictment,[45] Agent Hurstell testified that during the warning conference, she did, in fact, discuss "those violations" with Deare, while Fogle "was present in the room."[46]  But never did Agent Hurstell say (nor does the indictment allege) that the regulations prohibiting the engaging of selling firearms without a license were repeated, much less discussed, during that meeting.

Fogle was not a gun person.  She was not trained in gun regulations.  Her only knowledge of such regulations could have come only through her relationship with Deare, which only began shortly before the start of the alleged conspiracy period.  She had every reason to place her trust in Fogle's knowledge, as he had been trained in gun-dealing regulations since no later than 2006 and had been a licensed firearms dealer since 2015.[47]

There is no evidence that Deare told Fogle that what they were doing was illegal.  On the contrary, Deare has always insisted that what he was doing was not illegal, and consistent with someone who believes she is not violating the law, Fogle

---

[45] ROA.28.

[46] ROA.28, 4074.

[47] *Compare United States v. Marchetti*, 96 F.4th 818, 828 (5th Cir. 2024) (rejecting sophisticated defendant's reliance on *Nora*, *supra*, regarding proof of willfulness, holding: "Unfortunately for Marchetti, he is no Jonathon Nora.  He was not just a low-level administrative employee caught up unknowingly in someone else's conspiracy.").

freely admitted to ATF agents all of the conduct the Government relies on to prove that she conspired with Deare to engage in the business of dealing in firearms without a license.    As the Government presented no evidence that would permit the reasonable inference that Fogle had otherwise been made aware of what it means to engage in the business of dealing firearms without a license, the conviction must be reversed.

2.      **The Government committed plain error during closing argument by misrepresenting the evidence it had presented regarding the information discussed in Fogle's presence during the warning conference.**

### Standard of Review

Because defense counsel did not object to the prosecutor's misrepresentation of the evidence, review is for plain error.[48]  Under that standard of review, this court has the discretion to reverse a conviction based on an improper remark if that remark affected the defendant's substantial rights.[49]

### Analysis

"A prosecutor may not directly refer to or even allude to evidence that was not adduced at trial . . . [and] may not suggest that evidence which was not presented at

_____

[48] *United States v. Shah*, 95 F.4th 328 379 (5th Cir. 2024).

[49] *Id.*

-17-

trial provides additional grounds for finding defendant guilty."[50] As discussed above, the Government twice told the jury during its closing arguments that it had honored its promise, made in its opening statement, that the evidence showed that Fogle was present in the room with her husband when the ATF discussed what it means to engage in the unlicensed business of dealing in firearms. In fact, no such evidence was presented. Hence, the remark was improper.

The Government may argue that any such error could not have affected Fogle's substantial rights in part because the district court gave the standard instruction that "questions, statements, objections, and arguments made by lawyers are not evidence."[51] But there is good reason in this case to conclude that the jury was genuinely misled by the Government's description of the evidence it had presented three days earlier. Indeed, before the matter was even submitted to the jury, the Government managed to fool defense counsel and the district court judge about the evidence. Moreover, assuming the Government was not acting in bad faith, the Government managed to deceive itself about the evidence it had presented.

---

[50] *United States v. Lara*, 23 F.34th 459, 481 (5th Cir. 2012) (quoting *United States v. Murrah*, 888 F.2d 24, 26 (5th Cir. 1989) & *United States v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979)).

[51] ROA.4690.

The confusion was born in the Government's opening statement, when it promised to present testimony that ATF agents explained in front of Fogle "what it means to be engaged in the business" of dealing firearms. Not only did this never happen, but the error does not appear to have been simply an oversight in failing to put on the promised testimony. Thus, in preparing the 12-page conspiracy allegation in the indictment, the Government provided a detailed description of the inspection, the closing conference, and the warning conference, and Agent Hurstell's trial testimony exactly matched that description, which did not include the allegation that the definition of "engaging in the business" was ever discussed at the warning conference when Fogle was present.[52]

But when Agent Hurstell testified, consistently with the indictment, that she had discussed the inspection violations at the *warning conference*, the Government immediately had the Agent identify the document presented to Deare at the *closing conference* that occurred one month earlier. The Government then had the agent point out for the jury where Deare had acknowledged that he was advised "what it means to be engaged in the business of selling firearms."[53] The immediate juxtaposition of Agent Hurstell's description of the warning conference with her

---

[52] ROA.27-28.

[53] ROA.4074-76.

-19-

description of Deare's acknowledgment given at the closing conference falsely suggested that the acknowledgment related to the warning conference.

That even defense counsel was confused by this is reflected in his cross examination of Agent Hurstell regarding the acknowledgment form signed by Deare. The agent testified in cross that the form was signed at the end of the closing conference, prompting defense counsel to reveal: "I was thinking it was at the end of the warning conference."[54] Yet, when Fogle moved for judgment of acquittal three days later, defense counsel continued to accept as fact that at the warning conference, at which Fogle was present, not only were the gun-shop violations discussed, but Deare had been advised "of regulations that he needed to be aware of" and had "signed forms saying that he received notice and pamphlets about these regulations."[55]

Then, in response to Fogle's Rule 29 argument, the Government reinforced the misremembered evidence:

> She was present at the warning conference. He says no one explained it to her. She's a smart woman. She's sitting in the room when these regulations are being explained to her. She had an ability to hear them. She heard, just like Mr. Deare heard, what those laws were

---

[54] ROA.4084.

[55] ROA.4565.

with respect to gun shows, what they were with respect to engaging in the business.[56]

The district court was likewise convinced that this imaginary evidence had been presented to the jury. Thus in denying the Rule 29 motion, the district court chided defense counsel, stating, "to sit here and say that she was at this warning conference and just was totally zoned out is a little bit of a far reach."[57]

In other words, defense counsel, the judge, and even the Government all believed, quite incorrectly, that the Government had presented evidence showing that Fogle was present when the ATF discussed the rules and definitions regarding what it means to illegally engage in the unlicensed business of dealing in firearms. Given that the jury was thereafter twice told the same misrepresentation of evidence by the Government, a misrepresentation reinforced in defense counsel's argument,[58] it is difficult to believe that the jury was not likewise deceived into believing that Fogle was present during a discussion of the distinction between the illegal engaging in the business of dealing in firearms without a license and the entirely permissible practice of buying and selling one's personal firearms collections.

---

[56] ROA.4568.

[57] ROA.4570.

[58] *See* ROA.4678-79.

Consequently, if this Court does not agree that the evidence of willfulness was constitutionally lacking, as Fogle argued above, there can be no doubt that the evidence of willfulness was thin at best. And given that the Government's allegation of willfulness rests principally, if not exclusively, on the evidence it falsely claims to have presented, the error, which likely escaped the jury's notice, has surely affected Fogle's substantial rights, as the misrepresentations of the evidence during closing "cast serious doubt on the correctness of the jury's verdict."[59] Accordingly, this Court should find that the error "seriously affected the fairness, integrity, or public reputation" of the trial and exercise its discretion to vacate Fogle's conviction.[60]

## Conclusion

Because the Government failed to prove that Fogle acted willfully, her conviction should be reversed. Alternatively, because the Government in its closing arguments substantially misrepresented the evidence it relied on to prove willfulness, her conviction should be vacated and the matter remanded for a new trial.

---

[59] *Shah*, 95 F.4th at 381 (quoting *United States v. Aguilar*, 645 F.3d 319, 325 (5th Cir. 2011)).

[60] *See id.* at 379.

Respectfully submitted,

/s/ *Christopher Albert Aberle*
Christopher Albert Aberle
Attorney at Law
PO Box 8583
Mandeville, LA 70470-8583
(985) 871-4084
caaberle@gmail.com
*Attorney for Appellant*, Sarah Elaine Fogle

## Certificate of Service

I certify that a copy of this brief was electronically filed this November 6, 2024, with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

I further certify that (1) required privacy redactions have been made, 5TH CIR. R. 25.2.13; (2) the electronic submission is an exact copy of the paper Document, 5TH CIR. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ *Christopher Albert Aberle*
Christopher Albert Aberle